ENRIQUE REYES COREANO, demandante y recurrido, *v.* ING. WILSON M. LOUBRIEL, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE LOS PUERTOS DE PUERTO RICO ET AL., demandados y recurrentes.

### EN RECONSIDERACIÓN

*Número:* R-78-366     *Resuelto:* 20 de noviembre de 1979

*José A. Suro,* abogado de los recurrentes; *R. Adolfo de Castro* y *Nívea Raquel Avilés Caratini,* abogados del recurrido.

EN RECONSIDERACIÓN

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El recurrido, señor Reyes Coreano, fue nombrado el 1 de julio de 1974 Ayudante Director Ejecutivo en Administración y Finanzas de la Autoridad de los Puertos. El cargo era de confianza y pertenecía al Servicio Exento.

El 17 de noviembre de 1976, días después de las elecciones generales, la Autoridad de los Puertos aprobó un Reglamento de Personal que tenía el efecto de cambiar de categoría el puesto del recurrido. De funcionario de confianza se le convirtió en funcionario de carrera. No se alteraron sus deberes. Se le aumentó el sueldo sustancialmente poco antes del cambio de administración.

En mayo de 1977 la nueva administración despidió al señor Reyes. El recurrido argumentó que su cargo era de carrera. Para la fecha de su cesantía no se habían completado los trámites que exigen los Arts. 103.3 del Reglamento de 1976 y de 17 de marzo de 1977 de la Autoridad de los Puertos para formalizar un nombramiento de carrera.

La Sec. 4.7 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1337, dispone en parte:

"A los fines de asegurar la fiel aplicación del principio([1]) de mérito en el servicio público durante períodos pre y post eleccionarios, las autoridades deberán abstenerse de efectuar cualquier transacción de personal que envuelva las áreas esenciales al principio de mérito, tales como nombramientos, ascensos, descensos, traslados y cambios de categoría de empleados.

Esta prohibición comprenderá el período de dos meses antes y dos meses después de la celebración de las Elecciones Generales de Puerto Rico. . . ."([2])

El Tribunal Superior entendió que esta prohibición no obliga a la Autoridad de los Puertos y declaró con lugar la demanda del recurrido. Este Tribunal, mediante opinión y sentencia de 31 mayo de 1979, confirmó la sentencia recurrida. Ahora reconsideramos.

La aplicación de este mandato a solo parte del servicio público puede encerrar serios problemas constitucionales. *Elrod* v. *Burns*, 427 U.S. 347 (1976); *Cf. Shakman* v. *Democratic Organization of Cook County*, —(F.Supp—N. Ill. 1979); Comments, *Patronage Dismissals: Constitutional Limits and Political Justifications*, 41 U. Chi. L. Rev. 297 (1974). No es necesaria su consideración en este caso en vista de las propias disposiciones de la Ley de Personal del Servicio Público y su historial legislativo.([3])

La Ley de Personal provee que sus disposiciones no aplicarán a "Los empleados de agencias o instrumentalidades [*sic*] del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales". Ley Núm. 5 de 14 de octubre de 1975, Sec. 10.6(4), según enmendada, 3 L.P.R.A.

([1])Una ley posterior a los hechos de este caso eliminó la frase "del principio". Ley Núm. 49 de 7 de junio de 1977, Sec. 2.

([2])Esta disposición contiene un último párrafo que permite excepciones "por necesidades urgentes del servicio", con la aprobación del Director de la Oficina de Personal. No medió tal aprobación en este caso, por lo que huelga discutir el alcance de la medida.

([3])El incumplimiento del Art. 103.3 de ambos reglamentos de la Autoridad de los Puertos constituye base suficiente para la revocación de la sentencia del Tribunal Superior a favor del recurrido, pero ya que en la opinión original de este Tribunal se discute la aplicación o no a la Autoridad de los Puertos de la Sec. 4.7 de la Ley de Personal consideramos nuestro deber expresarnos sobre tal extremo.

sec. 1338(4). Los empleados de la Autoridad de los Puertos tienen este derecho. Es por tal razón que se arguye que esta agencia está libre para desatender la prohibición antes citada sobre transacciones de personal antes y después de las elecciones generales.

■■■ El texto de la ley no respalda esta interpretación. La Exposición de Motivos de la ley, Leyes de Puerto Rico, 1975, Parte 2, págs. 801–02, afirma:

"Un examen en conjunto de la historia del funcionamiento del sistema creado por la Ley de Personal de 1947 durante los 27 años de su vigencia, demostrará un balance a favor de sus logros. A pesar de ello, ha llegado el momento de revisar el sistema, a la luz de la experiencia acumulada durante esos 27 años, para reafirmar sus principios básicos y modernizar el sistema, ajustándolo a los conceptos más dinámicos y efectivos de administración de personal.

El aspecto más importante del esfuerzo que representa esta nueva ley, consiste en la precisión de una política pública que reafirma el principio de mérito y extiende dicho principio a todos los sectores del empleo público a los cuales no se ha extendido en la actualidad."

Otras disposiciones de la Ley de Personal reiteran el concepto de que el propósito central del estatuto es extender el principio de mérito a los sectores del empleo público a los cuales no se había extendido en 1975.[4] La Sec. 2.1(2), 3 L.P.R.A. sec. 1311(2), que declara la política pública que anima el estatuto, expresa:

"A fin de asegurar la extensión y el fortalecimiento del principio de mérito a todos los sectores del servicio público puertorriqueño, todos los empleados públicos, sean éstos empleados estatales, municipales, o de corporaciones públicas, estarán cubiertos por un solo sistema de personal, establecido para hacer cumplir el principio de mérito, el cual se conocerá como Sistema de Personal del Servicio Público."

Se advertirá que esta sección específicamente revela que fue la intención legislativa proteger, entre otros, a los empleados

---

[1]Véase la Sec. 2.1(3), 3 L.P.R.A. sec. 1311(3).

de las corporaciones públicas, exentas o no exentas, así como a los empleados municipales, que se rigen por disposiciones separadas de la ley. Véase *Delgado Rivera* v. *Alcalde de Carolina,* 109 D.P.R. 5 (1979).

■ En la Sec. 2.2(1), 3 L.P.R.A. sec. 1312(1), se señala como objetivo de la ley "Lograr que la administración pública se rija por criterios de la mayor uniformidad...." Esta uniformidad cubre, por lo menos, las áreas esenciales al principio de mérito, las cuales, como hemos visto, incluyen por disposición expresa de la ley los "cambios de categoría de empleados". 3 L.P.R.A. sec. 1337, *supra.*

En el informe sometido el 30 de septiembre de 1975 al Senado de Puerto Rico por las comisiones de Gobierno y de Derechos Civiles,[5] se explica ampliamente el alcance de la medida. Se señala que la Ley de Personal anterior no responde a las necesidades de los años setenta, que "ha conducido a una serie de desigualdades en el grado de protección" ofrecido en distintos sectores del gobierno (pág. 22), que el nuevo proyecto (*P. del S. 1428*) provee los medios para eliminar éste y otros problemas en la aplicación del principio de mérito (pág. 26), que este principio cubre las áreas esenciales ya mencionadas (págs. 26–27) y que "El principio de mérito se hace extensivo a todo el servicio público de Puerto Rico (y no solamente a la tercera parte que ahora tiene esa protección)" (pág. 27).

■ No hay indicio alguno en la ley o su historial[6] indicativo de que la Asamblea Legislativa deseó, al excluir la Autoridad de los Puertos a tenor de lo expresado en 3 L.P.R.A. sec. 1338, dotarla de inmunidad para alterar a su arbitrio categorías de cargos. Por el contrario, el historial legislativo demuestra que la razón que se tuvo para prohibir transacciones de personal, dos meses antes y dos después de

[5] No se ha publicado. Citamos de la versión mecanografiada.

[6] La Sec. 4.7 de la ley, 3 L.P.R.A. sec. 1338, fue añadida en el curso del debate en el Senado. Versión mecanografiada, pág. 36. Su inclusión había sido recomendada, como señalamos luego, en el estudio que llevó a la redacción de la ley.

las elecciones, en zonas esenciales del principio de mérito fue evitar las acciones ajenas a ese principio al advenir cambios de gobierno.[7]

La extensión uniforme del principio de mérito a las agencias excluidas no vulnera la autonomía que se les quiso conceder. En 1958 ya se recomendaba que el principio de mérito, con sus garantías básicas, debía extenderse a los sistemas autónomos sin lesionar su autonomía. *Informe del Comité del Gobernador para el Estudio de los Derechos Civiles en Puerto Rico*, Ed. Colegio de Abogados de P.R., 1959, págs. 138, 139, 141, 143. Quince años más tarde, el Comité para la Revisión de la Ley de Personal rindió su informe, que sirvió de fundamento de la legislación vigente y en el cual se concluyó que, aunque "[E]l principio de mérito fue reconocido e instituido en nuestra administración pública con el fin de proteger al empleado contra el sistema de patronazgo y despojo político. . .", "La comunidad y el empleado han visto, en los últimos años, al [*sic*] principio y al [*sic*] sistema de mérito afectados en su administración efectiva con elementos extraños de politización...". De ahí que entre las muchas recomendaciones que se hicieron se sugiriese "Prohibir durante el término de sesenta (60) días antes y sesenta (60) días después de cada elección general todo tipo de nombramiento, ascenso, reasignaciones de puestos, reasignaciones de clases de puestos a escalas superiores y aumentos de sueldo, con excepción de aquellos aumentos dispuestos por ley". Aponte Pérez, *El Historial y el Desarrollo del Servicio Civil en Puerto Rico*, 47 Rev. Jur. U.P.R. 150, 156, 159 (1978).[8] Esta es la fuente de la actual Sec. 4.7 de la Ley de Personal, 3 L.P.R.A. sec. 1337, y tal fue su propósito. La liberación de la Autoridad de los Puertos de las sanas restricciones que impone esa disposición choca contra su objetivo.

El recurrido invoca nuestra decisión en *Pastor Lozada* v.

---

[7]Véanse las declaraciones del Dr. Latoni ante el Senado, *op. cit.*, págs. 142 *et seq.*

[8]*Las citas corresponden a la descripción que hace Aponte Pérez del referido informe.*

*Director Ejecutivo*, 101 D.P.R. 923 (1974), en apoyo de su posición. Los hechos y las circunstancias de ley son totalmente distintos. *Díaz González* v. *Tribunal Superior*, 102 D.P.R. 195 (1974), constituye una analogía más precisa. En *Díaz González*, aun antes de aprobarse la Ley de Personal presente, no permitimos que un mes antes de las elecciones generales se cambiase a una empleada del Servicio sin Oposición al Servicio por Oposición. Estimamos que se violaba la filosofía que informa el sistema de mérito. Véase, además, *Ortiz* v. *Alcalde de Aguadilla*, 107 D.P.R. 819 (1978).

*Por las razones expuestas se reconsiderará la sentencia emitida y se revocará la dictada por el Tribunal Superior.*

El Juez Asociado Señor Díaz Cruz no reconsideraría la referida sentencia por los fundamentos de decisión expresados en la opinión original.

El Juez Asociado Señor Negrón García no intervino.