MUNICIPIO DE PONCE, demandante y recurrido, *v.* HON. PEDRO ROSSELLÓ GONZÁLEZ y OTROS, demandados y peticionarios.

*Número:* CE-96-936    *Resuelto:* 5 de mayo de 1995

*Alberto Rodríguez Ramos*, de *Martínez, Odell & Calabria*, y *Alberto Aresti Franceschini*, abogados de los peticionarios; *Alberto Omar Jiménez Santiago*, de *Bauzá & Dávila*, abogado del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776 (1994), mediante Opinión del Tribunal emitida por el Juez Presidente Señor Andréu García confirmamos, luego de modificarlo "para eliminar la disposición que decreta la transferencia de personal", el *injunction* preliminar de 25 de febrero de 1994 dictado por el Tribunal de Primera Instancia, Sala Superior de Ponce, en el caso *Municipio de Ponce v. Hon. Pedro Roselló González et al.*, Civil Núm. JAC 93-0233.(¹) El *injunction* preliminar requirió al Estado "dar fiel cumplimiento a los términos de los cinco (5) convenios suscritos entre las partes y en su consecuencia transferir *inmediatamente los fondos* ... conforme a los mismos *durante la pendencia de este litigio y hasta su resolución final*". (Énfasis suplido.) Íd., pág. 4.

---

(¹) El Juez Asociado Señor Negrón García emitió una opinión disidente y el Juez Asociado Señor Rebollo López hizo constar que disentía " 'por entender que, en esta etapa de los procedimientos, resulta improcedente en derecho ordenarle a la parte demandada que le satisfaga al Municipio de Ponce demandante las sumas de dinero por éste reclamadas en la demanda; sobre todo, cuando se considera que tanto el foro de instancia como este Tribunal estiman que la defensa levantada por la parte demandada, sobre nulidad de los contratos otorgados por las partes, es una que debe ser dilucidada en un juicio plenario. La acción hoy tomada por una mayoría de los integrantes del Tribunal es totalmente contraria a la normativa pertinente vigente en nuestra jurisdicción y la misma verdaderamente resulta ser inexplicable desde un punto de vista jurídico' ". (Énfasis suprimido.) *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 792–793 (1994).

Así las cosas, el 29 de noviembre de 1994 el Municipio de Ponce presentó moción para que se señalara vista de desacato y para que se ordenara la consignación de los fondos. A esta moción los demandados se opusieron. Luego de celebrar vista, el foro de instancia dictó una resolución y orden el 22 de diciembre de 1994. En la misma expresó que, en Cámara, el Juez se reunió con los abogados de las partes e hicieron un análisis del asunto en controversia. Continuó diciendo "que excepto en cuanto al Departamento de la Vivienda todos los demás convenios con las restantes Agencias contenían cantidades específicas; [y que en cuanto] al Departamento de la Vivienda se sometió por una funcionaria de dicho Departamento una relación conteniendo el saldo libre disponible al 31 de noviembre de 1994". Apéndice de la Petición de *certiorari*, pág. 001. Luego de estas observaciones decretó que las siguientes cantidades fuesen consignadas en el tribunal bajo apercibimiento de desacato.

*Junta de Planificación*

| | |
|---|---|
| enero 1993–junio 1993 | $31,500.00 |
| julio 1993–junio 1994 | 54,000.00 |
| julio 1994–junio 1995 | 54,000.00 |

*Administración de Reglamentos y Permisos*

| | |
|---|---|
| enero 1993–junio 1993 | 78,500.00 |
| julio 1993–junio 1994 | 215,988.00 |
| julio 1994–junio 1995 | 215,988.00 |

*Junta de Calidad Ambiental*

| | |
|---|---|
| enero 1993–junio 1993 | 31,500.00 |
| julio 1993–junio 1994 | 54,000.00 |
| julio 1994–junio 1995 | 54,000.00 |

*Departamento de Transportación y Obras Públicas*

| | |
|---|---|
| enero 1993–junio 1993 | 152,100.00 |
| julio 1993–junio 1994 | 288,925.00 |
| julio 1994–junio 1995 | 288,925.00 |

*Departamento de Recursos Naturales*

| | |
|---|---|
| enero 1993–junio 1993 | 41,015.53 |
| julio 1993–junio 1994 | 70,312.00 |
| julio 1994–junio 1995 | 70,312.00 |

*Departamento de la Vivienda*

| | |
|---|---|
| Saldo libre disponible al 31 de noviembre 1994 | $4,120,694.68 |

(Énfasis en el original.) Íd., pág. 002.

El 29 de diciembre de 1994 la parte demandada presentó ante esta Curia una petición de *certiorari* para revisar la Orden de 22 de diciembre de 1994. Alegaron la comisión de dos (2) errores:

A.  Erró el Tribunal de Instancia al ordenar a los jefes de las agencias concernidas y al Secretario de Hacienda a consignar la suma agregada de $5,821,760.21 so pena de desacato y bajo apercibimiento de arresto. Aún bajo el supuesto de que los convenios sean válidos, lo que se niega, procedería única y exclusivamente una orden de consignación de fondos ascendentes a $2,190,208.78.

B.  Erró el Tribunal de instancia al ordenar la consignación sin conceder a los Demandados-Peticionarios una vista evidenciaria con notificación previa adecuada para presentar prueba en apoyo de sus contenciones. La actuación del Tribunal de resolver a base de una conferencia informal en cámara constituyó un abuso de su discreción, el cual se tradujo en una violación al debido proceso de ley de los Demandados-Peticionarios. Petición de *certiorari*, págs. 5 y 12.

La petición de *certiorari* la acompañaron con una moción en auxilio de jurisdicción en la cual arguyeron, en síntesis, que la cantidad a ser consignada debió ascender a $2,190,208.78 y no a $5,821,760.21, según había dispuesto

el foro de instancia. En Resolución de 30 de diciembre de 1994, pág. 1, dispusimos lo siguiente:

> ... 1) se acepta que la parte demandada peticionaria consigne, bajo protesta, la suma de $2,190,208.78 en la Secretaría del Tribunal Superior de Puerto Rico, Sala de Ponce; 2) se le concede a la parte demandante-recurrida, Municipio de Ponce, el término de diez (10) días para que muestre causa por la cual este Tribunal no deba expedir el recurso radicado y dictar Sentencia revocatoria de la orden recurrida, *devolviendo el caso a dicho foro para que éste celebre una vista evidenciaria en la cual deberá dilucidar, a base de la prueba que presenten las partes, la suma alegadamente adeudada por el Estado*; y 3) en auxilio de nuestra jurisdicción, se ordena la paralización de los procedimientos a nivel de instancia hasta que otra cosa disponga este Tribunal. (Énfasis en el original.)

Ese mismo día la parte demandada presentó una moción en el foro de instancia consignando bajo protesta la suma de $2,190,108 .78.

No hay controversia en cuanto a la consignación bajo protesta de los $2,190,208.78. En nuestra resolución ordenando al Municipio de Ponce mostrar causa por la cual no deberíamos revocar la Resolución y Orden de 22 de diciembre de 1994 aceptamos que se consignasen esos fondos en la Secretaría del Tribunal de Primera Instancia, Sala Superior de Ponce. En cuanto al remanente, estamos de acuerdo con los demandados-peticionarios en que hay una controversia en cuanto a la suma que realmente podría adeudar el Estado y debió celebrarse vista evidenciaria para dilucidarla.

Mediante nuestra Opinión de 29 de agosto de 1994, en cuanto a los fondos adeudados por el Estado al Municipio de Ponce, confirmamos el *injuction* preliminar dictado por el foro de instancia el 23 de febrero de 1994 que ordenaba transferir inmediatamente los fondos adeudados por el Estado a base de los convenios. Es, ante el incumplimiento del Estado con esta orden, que el Municipio de Ponce solicita vista de desacato y consignación de los fondos. Luego de la vista, el tribunal ordena la consignación. El Estado

opta por consignar bajo protesta la cantidad que no estaba en controversia. Surge con meridiana claridad que la consignación solicitada por el Municipio de Ponce constituyó el mecanismo utilizado por éste para lograr el cumplimiento del *injunction* preliminar dictado en instancia y confirmado en nuestra Opinión de 29 de agosto. En el *injunction* preliminar se ordenó la transferencia de los fondos adeudados por el Estado en virtud de los cinco (5) convenios suscritos entre el Estado y el mencionado Municipio. Nada debe impedir que el Municipio de Ponce retire los fondos consignados y que de esta forma se le dé cumplimiento al *injunction* preliminar.

Ahora bien, quisiéramos dejar claramente establecido que el hecho de que se haya dictado un *injunction* preliminar ordenando la transferencia de los fondos en modo alguno adjudica ni prejuzga la controversia, ni siquiera una parte de ella. El *injunction* preliminar es una medida provisional que puede estar en vigor hasta la resolución final del pleito, o puede eliminarse o variarse en cualquier momento en que el tribunal lo ordene, por estimarlo necesario, antes de que finalice el caso. El propósito de este remedio provisional es principalmente mantener el statu quo hasta que se resuelva el caso. En *Mun. de Ponce v. Gobernador*, supra, luego de analizar los cinco (5) criterios esbozados en nuestra jurisprudencia para la concesión del *injunction* preliminar[2] confirmamos, luego de modificarlo, el *injunction* preliminar —dictado en instancia— que ordenó la transferencia de los fondos. El hecho de que posteriormente se ordenara la consignación y que ésta se hiciera bajo protesta no tiene el efecto de revocar o modificar el *injunction* preliminar que confirmamos. Tampoco le impide al Estado plantear todas las defensas aducidas en instancia, incluyendo la de nulidad de los convenios. En conclusión, este Tribunal ya pasó juicio sobre la validez del *injuc-*

---

[2] *A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903 (1975); *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200 (1975).

*tion* preliminar. El tribunal de instancia resolverá la controversia independientemente de la medida provisional de *injunction* preliminar previamente emitida. No está ante nuestra consideración la reconsideración a nuestra opinión sobre la validez del *injunction* preliminar. La controversia en el caso de autos se limita a cuestionar si el foro de instancia utilizó el procedimiento adecuado para determinar la cantidad adeudada que debía ser transferida al Municipio de Ponce.

Estamos de acuerdo con los peticionarios en que debió celebrarse vista evidenciaria sobre la cantidad en controversia. Sin embargo, esto no impide que, a la luz del estado procesal del caso y en cumplimiento con lo dispuesto en nuestra Opinión de 29 de agosto de 1994, el Municipio de Ponce pueda retirar la totalidad de los fondos consignados y que, en aras de la economía procesal, así lo autoricemos al resolver este recurso. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Por todo lo antes expuesto, *se expide el auto de "certiorari" solicitado y se dictará sentencia revocando la Orden emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, de 22 de diciembre de 1992 y devolviendo el caso al foro de instancia para que éste celebre una vista evidenciaria en la cual deberá dilucidar a base de la prueba que presenten las partes, la suma adeudada por el Estado. En cumplimiento de nuestra Opinión de 29 de agosto de 1994 y a tenor con lo dispuesto en la Regla 1 de Procedimiento Civil, el Municipio de Ponce podrá retirar la totalidad de los fondos consignados por la parte demandada.*

Los Jueces Asociados Señores Negrón García y Rebollo López disintieron con opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

I

Discrepamos nuevamente. La opinión de hoy es derivado indefectible de la inconclusa Opinión mayoritaria de 29 de agosto de 1994.

Decimos inconclusa, pues pospuso la controversia medular al no decidir si los cinco (5) convenios suscritos por el entonces Gobernador, Hon. Rafael Hernández Colón, con el Alcalde de Ponce, Hon. Rafael Cordero Santiago, los días 25 y 30 de noviembre y 31 de diciembre de 1992 (próximo a expirar su mandato de ese cuatrienio), eran *radicalmente nulos*. Aún así, este Foro ordenó al Gobierno Central la transferencia de cuantiosas sumas de fondos públicos al Municipio de Ponce.

Allí, al examinar la cuestión en sus méritos, demostramos la nulidad de los convenios en cuestión y, por ende, la improcedencia del *injunction* preliminar y de esas transferencias de fondos. Por su pertinencia, procede revisitemos sucintamente los fundamentos.

*Primero*, los convenios fueron suscritos durante un período en que, tanto la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*), como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), *imponían una veda electoral absoluta*. Dijimos:

> En el fondo estamos ante una vulneración de norma legislativa de sana moralidad y administración pública que intenta evitar que aquellos funcionarios en el umbral de su gestión gubernamental puedan extender, ejercer y perpetuar su poder e influencia más allá del cuatrienio en el cual les correspondía servir. (Énfasis suprimido.) *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 797 (1994).

Y *segundo*, dichos convenios contenían —contrario a la ley (particularmente la de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991) y el orden público— una ventajosa cláusula de resolución *unilateral* que *sólo* beneficiaba al Municipio de Ponce.

Se dio la situación y anomalía —todavía continúa— que una criatura jurídica del Estado quedó investida de mayores poderes y prerrogativas que el ente que le insufló vida.

Este Tribunal confirió indebidamente al Municipio de Ponce el beneficio de dicha cláusula, aun cuando la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 no les concede esa prerrogativa de resolución unilateral; hizo caso omiso de que, en cuanto al Estado, "[n]uestra jurisprudencia estima que dicha cláusula está 'presente', esto es, escrita e inserta en todos los convenios". (Énfasis suprimido.) *Mun. de Ponce v. Gobernador*, supra, pág. 800.

## II

La orden judicial de entregar los fondos —de facto e iure— derrota la posibilidad del Gobierno Central de dar por finalizados unos convenios ilegales y contrarios al orden público. Devolver este accidentado caso al tribunal de instancia para una vista evidenciaria y determinación de cuánto el Estado "adeuda" al Municipio de Ponce es un paso procesal adicional que realmente torna en académica la posibilidad del Estado prevalecer.

En aras de evitar ese innecesario peregrinaje judicial e injusticia, debió la mayoría hacer lo que desde el principio procedía: *declarar la nulidad absoluta de estos convenios*.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Las decisiones erróneas que emite este Tribunal no sólo confunden a la clase togada en general sino que, como el *boomerang*, regresan a este Foro, causándole a éste y a las partes innecesarios sinsabores y dolores de cabeza. Esta clase de situaciones se complica cuando el Tribunal no sólo resuelve erróneamente la controversia ante su consideración sino que, al hacerlo, utiliza innecesariamente el mecanismo decisorio de la "Opinión"; mecanismo que únicamente debe de utilizar el Tribunal para resolver controversias importantes de derecho y para, de paso, establecer normas que rijan los destinos de nuestro ordenamiento.

La decisión mayoritaria emitida en el día de hoy es un vivo ejemplo de lo anteriormente señalado. En el presente caso el Tribunal utiliza, innecesariamente y por segunda ocasión, el mecanismo decisorio de la "Opinión" para resolver una controversia, de índole interlocutoria, de sencilla adjudicación: si el tribunal de instancia erró o no al ordenarle al Gobierno de Puerto Rico que le pagase, por adelantado, una cuantiosa suma de dinero al Municipio de Ponce —en un pleito en que, precisamente, el Gobierno cuestiona la validez de los contratos otorgados entre dicho Municipio y la anterior administración de gobierno, bajo los cuales contratos reclama el Municipio— *sin* que dicho foro haya pasado juicio sobre la validez o nulidad de dichos contratos.

Lo realmente lamentable, sin embargo, no es que se utilice ese mecanismo decisorio en una situación en que no se establece norma alguna de derecho. Lo verdaderamente trágico lo es el hecho de que, en ambas ocasiones, la Mayoría se equivoca al resolver la controversia ante su consideración.

I

El pleito que sirve de base al recurso hoy ante nuestra consideración se refiere a una demanda que radicara el Municipio de Ponce ante el Tribunal Superior de Puerto Rico, Sala de Ponce, contra el Gobernador de Puerto Rico, Hon. Pedro Rosselló González, y seis (6) de las agencias del Gobierno de Puerto Rico. En el mismo, el referido Municipio reclama, de manera principal y en síntesis, el "cumplimiento específico" de cinco (5) convenios que otorgara la antigua administración de gobierno, dirigida por el Lcdo. Rafael Hernández Colón, con el referido Municipio de Ponce; convenios otorgados al amparo de las disposiciones de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, mediante los cuales el Gobierno y las agencias concernidas se comprometieron a transferir fondos y personal al referido Municipio. El Estado, en su contestación a la acción radicada por el Municipio de Ponce, levantó, *como defensa principal*, la *nulidad* de los referidos convenios; quedando así trabada la controversia entre las partes.

El 25 de febrero de 1994, el foro de instancia emitió, a solicitud del demandante Municipio de Ponce, una orden mediante la cual le ordenó al Estado "a *dar fiel cumplimiento* a los términos de los Cinco (5) convenios suscritos entre las partes *y en su consecuencia transferir inmediatamente los fondos y el personal* establecido conforme a los mismos durante la pendencia de este litigio y hasta su resolución final". (Énfasis suplido.) Apéndice de la Petición de *certiorari*, pág. 094.

Dicha *asombrosa* y, a nuestro entender, *errónea* orden fue emitida por el foro de instancia al amparo de las disposiciones de las Reglas 55, 56 y 57 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), en un pleito en que la parte demandada Estado Libre Asociado de Puerto Rico *precisamente está cuestionando la validez de los cinco (5) conve-*

*nios otorgados por la antigua administración del Gobierno
con el Municipio de Ponce.* Esto es, al tribunal de instancia,
*no obstante estar en controversia la validez de los conve-
nios,* ordenar el "cumplimiento específico" de los mismos,
resolvió —*para todos los efectos prácticos*— que dichos con-
venios eran válidos; ello en un procedimiento interlocutorio
en solicitud de "remedios provisionales".

Inconforme, *naturalmente,* el Estado acudió ante este
Tribunal —vía *certiorari*— en revisión de tan *errada*
actuación. Este Tribunal, mediante Opinión y Sentencia de
29 de agosto de 1994, *confirmó* en parte, y *revocó* en parte,
la orden recurrida. Resolvió, en síntesis, una mayoría de
los integrantes del Tribunal que *procedía* la transferencia
de fondos pero *no* la transferencia de personal.

*En otras palabras,* la Mayoría cometió el *mismo* error
que el foro de instancia; ésto es, ordenó la transferencia de
fondos sin que se hubiera pasado, o emitido, juicio sobre la
validez o nulidad de los convenios en controversia. En esa
ocasión, *disentimos* mediante la emisión de una "expre-
sión" a esos efectos.([1])

Devuelto el caso al foro de instancia, el Municipio de
Ponce radicó una solicitud de "desacato" contra el Estado,
predicada la misma en que éste no había transferido los
fondos. A juicio del Municipio, el Estado venía obligado a
así hacerlo en virtud tanto de la orden del foro de instan-
cia, de fecha 25 de febrero de 1994, como de la Opinión y
Sentencia de este Tribunal, de fecha 29 de agosto de 1994.

---

([1]) "El Juez Asociado Señor Rebollo López disintió "por entender que, en esta
etapa de los procedimientos, resulta improcedente en derecho ordenarle a la parte
demandada que le satisfaga al Municipio ... demandante, las sumas de dinero por
éste reclamadas en la demanda; sobre todo, cuando se considera que tanto el foro de
instancia como este Tribunal estiman que la defensa levantada por la parte deman-
dada, sobre nulidad de los contratos otorgados por las partes, es una que debe ser
dilucidada en un juicio plenario. La acción hoy tomada por una mayoría de los inte-
grantes del Tribunal es totalmente contraria a la normativa pertinente vigente en
nuestra jurisdicción y la misma verdaderamente resulta ser inexplicable desde un
punto de vista jurídico." (Énfasis suprimido.) *Mun. de Ponce v. Gobernador,* 136
D.P.R. 776, 792–793 (1994).

El Juez Asociado señor Negrón García igualmente disintió de la Opinión mayo-
ritaria emitida.

El tribunal de instancia señaló una vista para la "discusión" de la referida moción de desacato. En dicho día, *y sin celebrar vista evidenciaria alguna*, dicho foro determinó que el Estado venía en la *obligación inmediata* de transferirle al Municipio de Ponce la suma de $5,821,760.21. Inconforme, *naturalmente*, el Estado *nuevamente* recurrió ante este Tribunal —vía *certiorari*— en revisión de dicha actuación judicial.

En el recurso que a esos efectos radicara el Estado planteó que aun cuando se asumiera, *a los fines de la argumentación*, la validez de los convenios —*lo cual negaba*— la suma de dinero que venía en la "obligación de transferir", conforme la Opinión y Sentencia de este Tribunal, sería la de $2,190,208.78 y no la de $5,821,760.21; ello por razón de que este Tribunal, en la referida Opinión y Sentencia, había determinado que no procedía la transferencia de empleados. Adujo el Estado, en adición, que en relación con la transferencia de fondos, el foro de instancia había errado al no recibir prueba con el propósito de determinar la suma exacta de dinero que se "adeudaba" por ese concepto.

Mediante Resolución, de fecha 30 de diciembre de 1994, pág. 1, este Tribunal proveyó de la manera siguiente:

> ... 1) ... *que la parte demandada peticionaria consigne, bajo protesta, la suma de $2,190,208.78 en la Secretaría del Tribunal Superior de Puerto Rico, Sala de Ponce*; 2) [concederle] a la parte demandante-recurrida, Municipio de Ponce, el término de diez (10) días para que muestre causa por la cual este Tribunal no deba expedir el recurso radicado y dictar Sentencia revocatoria de la orden recurrida, *devolviendo el caso a dicho foro para que éste celebre una vista evidenciaria en la cual deberá dilucidar, a base de la prueba que presenten las partes, la suma alegadamente adeudada por el Estado*; y 3) en auxilio de nuestra jurisdicción, [ordenar] la paralización de los procedimientos a nivel de instancia hasta que otra cosa disponga este Tribunal. (Énfasis suplido y en el original.)

El Municipio de Ponce compareció en cumplimiento de la referida Resolución. Estando pendiente de resolución fi-

nal el recurso radicado por el Estado, el Municipio radicó una "moción en auxilio de jurisdicción". En la misma solicitó de este Tribunal que "permita que el Municipio retire de inmediato los fondos consignados por la parte demandada en el Tribunal de instancia. De igual forma, la parte demandante solicita de este Honorable Tribunal que ordene que la parte demandada consigne, para ser retirados por el Municipio, los fondos restantes dispuestos en la resolución y orden del Tribunal de instancia". Moción en auxilio de jurisdicción, pág. 2.

## II

Como surge de la anterior relación de los procedimientos, el Municipio de Ponce alega tener derecho a los cuantiosos fondos en controversia en virtud de los términos de los contratos que otorgara con la administración de gobierno del licenciado Hernández Colón mientras que el Estado sostiene no tener obligación alguna de desembolsar dichos fondos por razón de que dichos convenios son totalmente nulos.[2]

En consecuencia, la controversia que, *en primer término*, viene en la obligación de resolver el foro judicial lo es si dichos contratos son válidos o no. Dependiendo de cual sea la decisión al respecto, se procederá a determinar el derecho del Municipio de Ponce a recibir dichos fondos. No hay duda de que si los contratos son válidos, el Municipio

---

[2] La Opinión emitida por el Tribunal produce la errónea impresión de que el Estado no tuvo objeción a consignar y/o a que el Municipio de Ponce reciba en esta etapa de los procedimientos la suma de $2,190,208.78. *Nada más lejos de la realidad y la verdad.*

La posición del Estado siempre ha sido clara a los efectos de que entiende que, debido al hecho de que los contratos son nulos, *no* tiene obligación legal de pagarle suma de dinero alguna al Municipio de Ponce. La consignación que hiciera el Estado ante el foro de instancia, de la suma de $2,190,208.78, fue hecha, en primer lugar, "bajo protesta" y, en segundo lugar, en cumplimiento de —y avalada por— nuestra Resolución de fecha 30 de diciembre de 1994. Nunca, *repetimos*, el Estado ha aceptado que tiene el deber legal de pagar dicha suma de dinero.

tendrá pleno derecho a los mismos. Ahora bien, la determinación judicial de nulidad de los contratos puede desembocar en una de dos (2) alternativas. Puede ser que el Municipio de Ponce, aún siendo nulos los contratos, tenga derecho a dichos fondos; ello por razón de que prestó los servicios requeridos bajo los mencionados contratos y que procede la entrega de los mismos bajo la doctrina de enriquecimiento injusto. Podría ser, por otro lado, que lo procedente en derecho sea denegarle los fondos. Así lo hemos resuelto, en casos en que personas o corporaciones le han prestado servicios, o suministros, a un municipio, sin la celebración de la correspondiente subasta. Véase *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001 (1994). *En fin, no está claro el derecho del Municipio de Ponce a recibir dichos fondos.*

¿Por qué, entonces, ordenar la entrega de fondos en estos momentos sin que se haya pasado juicio sobre la validez, o nulidad, de dichos contratos y sin que se haya decidido el derecho, o no, del Municipio a dichos fondos? ¿Nó sería más correcto, y procedente en derecho, ordenarle al foro de instancia que resuelva, en primer término, esa controversia principal? ¿No trata dicha controversia sobre una estricta cuestión de derecho, para la cual se supone que el foro judicial esté plenamente capacitado para resolverla? ¿Por qué la prisa? ¿Hay algún interés particular, no jurídico, en así hacerlo?

### III

Las interrogantes arriba expuestas cobran, aún, mayor relevancia e importancia cuando consideramos el hecho de que la expedición por el foro de instancia, y la confirmación por este Tribunal, del *injuction* preliminar *es, a todas luces, una actuación errónea.*

Un *injunction* preliminar es aquel que se emite antes del juicio en su fondo con el propósito de mantener el *status*

*quo*[3] hasta la resolución final del pleito en sus méritos. D. Rivé Rivera, *Recursos Extraordinarios*, San Juan, Facultad de Derecho, Universidad Interamericana de Puerto Rico, 1989.

La decisión de un tribunal de conceder, o no, un *injunction* preliminar depende de los siguientes criterios: (1) la naturaleza de los daños que pueden ocasionársele a las partes de concederse o denegarse el *injunction*; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) *la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo*; (4) la probabilidad de que la causa se torne académica de no concederse el *injunction; y, sobre todo, (5) el posible impacto sobre el interés público del remedio que se solicita.* Véanse: *Cobos Liccia v. DeJean Packing Co., Inc.*, 124 D.P.R. 896, 902 (1989); *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200 (1975).

Si bien es cierto que en nuestra jurisdicción prevalece, en materia de contratos, el principio de la libertad de contratación entre las partes contratantes, éstas al establecer los pactos, cláusulas y condiciones *no* pueden actuar contrario a la ley, la moral y el orden público. Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372. En adición, debe mantenerse bien presente que aquellos actos que sean ejecutados contrario a lo dispuesto en la ley son *nulos*. Art. 4 del Código Civil, 31 L.P.R.A. sec. 4.

Los convenios en controversia en el caso de autos son de su faz *nulos* ya que los mismos contravienen la Sec. 4.7 de la ley, la moral y el orden público. En primer lugar, la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1337), y el Art. 12.014 de la Ley de Municipios Autónomos del Estado Li-

---

[3] *Status Quo* — "La última condición pacífica y natural que precedió al inicio de un pleito." I. Rivera García, *Diccionario de Términos Jurídicos*, 2da ed. rev., New Hampshire, Ed. Equity, 1985, pág. 434.

bre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4564, *prohiben expresamente* que se efectúen traslados de personal y, por ende, la transferencia de los fondos para pagar sus nóminas, durante los períodos pre y post electorales, *específicamente* "dos meses antes y dos meses después de la celebración de las elecciones generales en Puerto Rico"; prohibición que se extiende hasta el segundo lunes del mes de enero siguiente a la fecha de dichas elecciones en los casos de los municipios.

Los convenios en el caso de autos fueron suscritos por el entonces Gobernador de Puerto Rico, Rafael Hernández Colón, el Alcalde de Ponce, Rafael Cordero Santiago, y varios funcionarios gubernamentales los días 25 y 30 de noviembre y 31 de diciembre de 1992, *esto es, dentro del período expresamente prohibido por los estatutos anteriormente señalados, sin que estuviera presente ninguna necesidad urgente del servicio que justificara tal acción según contemplado en las leyes de referencia.*

Estos convenios se realizaron contrario a lo dispuesto en la Ley de Personal del Servicio Público de Puerto Rico, cuyo propósito es proteger al empleado contra el sistema de patronazgo y despojo político (*Reyes Coreano v. Director Ejecutivo*, 109 D.P.R. 229 (1979)) *y, por lo tanto, la nulidad es la consecuencia jurídica de los mismos.* En adición, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 expresamente establece, *como penalidad,* que los nombramientos que no cumplan con las disposiciones del Art. 12.014 antes señalado se considerarán *nulos.*

Por otro lado, los referidos convenios atentan contra el orden público por violentar el conjunto de valores eminentes que guían la existencia y el bienestar de nuestra sociedad, *Hernández v. Méndez & Assoc. Dev. Corp.*, 105 D.P.R. 149 (1976), ya que los mismos colocan al Municipio de

Ponce en una ventajosa posición frente al Gobierno Central, en un momento donde se aproximaba un inminente cambio de administración a nivel estatal.

En consecuencia, el Municipio de Ponce no tiene derecho a recibir los fondos acordados bajo dichos convenios, ni aun bajo el supuesto que pudiera haber un enriquecimiento injusto a costa del referido Municipio. Ello es así ya que, como en el pasado hemos señalado, la doctrina de enriquecimiento injusto "no se aplicará cuando resulte contrario a una clara política pública, plasmada en un estatuto o en la Constitución". (Énfasis en el original suprimido.) *Hatton v. Mun. de Ponce*, ante, pág. 1010. Véase *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682 (1987). Como señaláramos en *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697, 703 (1983), *no* debe invocarse el enriquecimiento injusto "cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del país".

En el caso de autos, el Municipio de Ponce y el Estado, al otorgar los convenios, *violentaron de forma abierta los principios de sana administración pública plasmados en nuestras leyes.*

Atendido todo lo anteriormente expuesto, y en vista del hecho de que la posibilidad de que la parte demandante recurrida prevalezca en juicio plenario es una altamente especulativa y cuestionable, *cabe preguntarse, nuevamente,* ¿por qué ordenar, en esta etapa de los procedimientos que se le entreguen al Municipio de Ponce los fondos en controversia? ¿No sería más lógico, juicioso y correcto esperar a resolver la controversia principal del caso, esto es, la validez o nulidad de los convenios en controversia?